[Civ. No. 19153. Second Dist., Div. One. Feb. 18, 1953.]

Estate of FRANZ WERFEL, Deceased. ALMA MARIA MAHLER WERFEL, Petitioner and Appellant, v. STATE OF CALIFORNIA FRANCHISE TAX BOARD et al., Contestants and Appellants.

George I. Devor, Krystal & Paradise and Stuart S. Hillman for Petitioner and Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, and Edward Sumner, Deputy Attorneys General, H. Brian Holland, Assistant Attorney General, Ellis N. Slack, Robert

N. Anderson and John J. Kelley, Jr., Special Assistants to the Attorney General, Walter S. Binns, United States Attorney, E. H. Mitchell and Edward R. McHale, Assistant United States Attorneys, and Frank W. Mahoney for Contestants and Appellants.

DORAN, J.—The facts relating to the within appeal are as follows. Decedent died August 26, 1945. The will was admitted to probate September 28, 1945, and letters testamentary issued to decedent's widow Alma Werfel on October 3, 1945.

Appellant Werfel's brief recites that ''On October 17, 1945, the trial court made an order authorizing a family allowance of $1,000.00 per month to be paid to the widow of the decedent for period not to exceed six months from the date of his death. No appeal was ever taken from said order. It became final by the lapse of time. Complying with said order of October 17, 1945, the executrix paid the widow the six monthly payments of $1,000.00 each, which payments were approved in the Order Settling First Account Current and Report of Executrix.

''On October 28, 1946, the court below made an order authorizing the executrix to pay to the widow $1,500.00 per month beginning from the date of the last payment made under the order of October 17, 1945, and ending upon further order of the court. This order was never appealed from and became final by lapse of time. Thereafter on September 1, 1946, the executrix filed her Second Account Current which reflected the payment of family allowance by the executrix to the widow in the amount of $21,000.00. These payments were for the period beginning February 25, 1946, and ending April 25, 1947. An order was made on May 28, 1948, approving said Second Account Current and the family allowance payments enumerated therein.

''On March 21, 1949, the Collector of Internal Revenue for the Ninth District served his request for special notice upon the executrix under the provisions of Probate Code, Section 1202. Subsequently, on March 31, 1949, the said Collector filed his claim against the estate in the amount of $16,735.00 for an income tax deficiency of the decedent for the year 1945. On July 7, 1949, the State of California filed a claim against the estate in the amount of $1,137.01 for an income tax deficiency of the decedent for the year 1945.

''The executrix filed her Third Account Current on Octo-

ber 28, 1949, which disclosed payment to the decedent's widow in the amount of $7,500.00 for family allowance for the period beginning April 25, 1947, and ending September 25, 1947.

"Thereafter, after the order settling executrix' Third Account Current, reducing executrix' bond and instructing executrix re payment of tax claims was vacated, a hearing was had on the Third Account Current on May 22, 1951. Among the issues raised, the Assistant Franchise Tax Commissioner argued that the executrix should be surcharged for her payments of family allowance to the widow because the estate was insolvent at the time the payments were made. The argument was that said payments deprived the Franchise Tax Commission of the estate assets from which he might satisfy his claim against the estate for the decedent's alleged income tax deficiency. The United States also appeared at the hearing and objected to the allowance of the Third Account Current.

"The Trial Court held in its memorandum opinion that the Franchise Tax Commissioner and the United States both having appeared in the Probate Court, were bound by the state of the record in that Court. As a consequence the Court held that they could not seek to surcharge the executrix for those payments, whether for family allowance or otherwise, which were settled and approved in the First and Second Accounts Current. However, the Probate Court surcharged the executrix in the amount of $7,500.00, being payments of family allowance made to the widow of the decedent for the period beginning April 25, 1947, and ending September 25, 1947. This ruling was made *despite the executrix' having made said payments pursuant to a valid and subsisting order of the very same Court made on October 28, 1946, which order authorized the executrix to make such payments of family allowance until a further order of the court.* (Italics added.) The executrix was never ordered to terminate the family allowance payments. Furthermore, the payments in the amount of $7,500.00 covered a period in 1945 and the Probate Court expressly found that 'The first notice to the executrix of any claim for unpaid taxes by either the State of California or the United States was upon receipt of a letter mailed April 28, 1948.'

"The executrix sought to have said payments in the amount of $7,500.00 approved in her Third Account Current. How-

ever, as above stated, the Court disapproved the payments and surcharged the executrix in the amount thereof, relying on Probate Code, Section 680 and *Estate of Treat,* 162 Cal. 250 [121 P. 1003]. It is from this portion of the Court's Order settling, allowing and approving Third Account Current of executrix, disapproving and surcharging executrix in part and for reduction of bond that this appellant appeals.''

The order appealed from was entered December 15, 1951. The appeals of United States and the California Franchise Tax Board are from the same order.

The United States contends that ''This case involves the question as to whether the Government is bound by certain orders of the Superior Court sitting as a Probate Court.'' Its brief recites that the question involved is ''Whether the Government is bound by the orders of the Probate Court approving the first two accounts of the executrix of the taxpayer's estate, such orders having been entered before the Government filed its proof of claim for a deficiency of income taxes due from the decedent and before it developed that the estate was insolvent.'' And, that ''It is the position of the United States that it should not be bound by orders of the probate court entered before it became a party to the proceedings.''

The Franchise Tax Board of the State of California contends that ''The basic question involved in the instant appeal, in the view of the Franchise Tax Board, has not been mentioned in the briefs heretofore filed by the executrix of the above entitled estate and the United States of America. That question is simply: What are the duties of an executor or administrator with respect to ascertaining and paying from assets of any particular estate federal and state tax claims which, under the decision of the California Supreme Court in *People* v. *Hochwender,* 20 Cal.2d 181 [124 P.2d 823], may be filed at any time prior to the termination of proceedings in the Probate Court?

''It is the position of the Franchise Tax Board of the State of California that it is the duty of an executor or administrator, in view of the Hochwender case, *supra,* and in view of the provisions of Section 18204 of the California Revenue & Taxation Code, Personal Income Tax Law, and the provisions of Section 680 of the Probate Code, to ascertain and make provision for tax claims prior to making any distribution of the assets of a decedent's estate and prior to permitting the payment of family allowance in excess of the maximum per-

mitted by Section 680 of the Probate Code in cases involving insolvent estates."

The court found in fact as follows:

### "XIV

"On March 31, 1949, the said Collector of Internal Revenue filed his claim against the estate of the above-named decedent for the sum of $16,735.18; that said claim was for an alleged deficiency of income tax of the decedent for the year 1945.

### "XV

"That on July 7, 1949, the State of California filed its claim against the estate of the above-named decedent for the sum of $1,137.01; that said claim was for an alleged deficiency of income tax of the decedent for the year 1945.

### "XVI

"That the claims mentioned in Findings XIV and XV are good, valid and subsisting claims against the estate of the decedent. That by reason of the filing of the claims aforesaid the amount of the debts of the decedent are in excess of the amount of the remaining assets in his estate.

### "XVII

"That the payment of the aggregate sum of $7,500.00 shown in said Third Account Current was paid by the executrix to the said Alma Maria Mahler Werfel *in good faith* and by virtue of said Order of this Court dated October 28, 1946; that at the time of the said payments said Order was in full force and effect." (Italics added.)

And as a conclusion of law found that:

### "I

"That the estate of the above-named decedent was rendered insolvent by the filing of the claims set forth in the foregoing Findings.

### "II

"That the Third Account Current of the Executrix should be approved, allowed and settled as rendered and reported, save and except that the item appearing in said account, viz: '9-14-49 Alma Maria Mahler Werfel, family allowance April 25 to September 25, 1947, $7,500.00' should be disallowed and the Executrix surcharged in said sum of $7,500.00.

### "III

"That the claim of the United States of America has priority over the claim of the State of California.

## "IV

"That the remaining assets of the estate should be reduced to cash by the executrix in the orderly process of administration.

## "V

"That after the payment of all costs and expenses of administration, the remaining cash on hand should be paid as follows: First, to the United States of America on its claim; secondly, to the State of California on its claim; thirdly, the residue, if any, to the person or persons entitled thereto under the last Will and Testament of the decedent."

It should be noted at the outset that neither the United States nor the state is entitled to any special privileges with relation to the administration of the law; each is just another litigant. It is well settled that when a court order or judgment becomes final that ends the litigation as to all litigants. The fact that the United States and the state appeared too late is no fault of either the court or the executrix.

The contention of the United States "that it should not be bound by orders of the probate court entered before it became a party to the proceedings" lacks support in the law. Its "position" in this regard is no different than other litigants or prospective litigants. Whether the state and the United States have a right of action against the estate or the executrix is beside the issue in the within proceedings. The action of the probate court was final in that proceeding so far as the United States and the state are concerned.

The orders of the probate judge were executed by the widow as executrix, in good faith. And, as pointed out by appellant, "The executrix, in paying the family allowance, was doing only what the Court ordered her to do. The Probate Court cannot order the executrix to pay and then surcharge her for obeying. It cannot entrap the executrix because of her obedience."

No petition to modify the court orders was filed and the action of the state and the United States in the proceedings was in effect nothing but a collateral attack.

So far as the contentions of the State of California is concerned, sections 680 of the Probate Code and 18204 of the Revenue and Taxation Code have no application in the circumstances herein. Section 680 limits the time payments may continue in insolvent estates; the estate herein was not insolvent. Section 18204 relates to the personal liability of a "fiduciary." Such issues cannot be raised collaterally in pro-

bate proceedings—at least not after the orders of the court have been complied with in good faith. The same situation applies to the United States.

The orders of a probate court as herein referred to are, in effect, judgments; the law is well settled in this regard and the many cases cited by appellant need not be cited here. The probate court clearly exceeded its authority when it sought to modify previous orders and require the executrix to repay monies theretofor paid under and by virtue of such previous orders. In effect the modification of the previous order was a judgment against the executrix; a judgment imposing a penalty for obeying the order thereafter modified.

For the foregoing reasons the orders of the probate court are affirmed with the exception of the order recited in paragraph II in the conclusions of law recited above. Said last-mentioned providing that the executrix be "surcharged in said sum of $7,500.00" is reversed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied March 9, 1953, and contestants and appellants' petition for a hearing by the Supreme Court was denied April 15, 1953.